Jacqueline ORTEGA and Floyd Ortega, Appellants (Plaintiffs),

v.

Guido FLAIM, Appellee (Defendant).

No. 94–266.

Supreme Court of Wyoming.

Sept. 7, 1995.

Robert W. Horn and Steven D. Olmstead, Jackson, for appellant.

Richard H. Honaker, Rock Springs, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

A social guest of landlord's tenant sustained personal injuries after falling down stairs at the tenant's residential dwelling. The social guest sued landlord for damages. Relying on the common law's general rule of landlord's immunity from liability, however, the district court granted landlord's motion for summary judgment. The social guest appealed, presenting this court with the primary issue of whether Wyoming will abandon the common law rules governing landlord liability as set forth in RESTATEMENT (SECOND) OF TORTS §§ 356–362 (1965) and adopt a duty of reasonable care. Alternatively, if the court does not impose a duty of reasonable care, appellant social guest invites this court to attach liability based on theories of implied warranty of habitability, strict liability, and nuisance. Having carefully considered the questions before us, we decline to abrogate the common law rule or attach liabilities under the presented alternative theories.

We affirm the grant of summary judgment.

## ISSUES

Appellant social guest presents these issues:

I. Where the terms of an oral agreement do not speak to whose obligation it is to make repairs, must a landlord who is advised by the tenant of a defect in the condition of stairs on the premises use ordinary care in repairing the defect or averting the danger caused by the defect?

II. Does a duty exist on the part of a landlord who purchases a house sight unseen, with the intent of renting that house to a family, to use ordinary care in detecting dangers from defects in the structural, electrical, heating or plumbing systems of the house and warning of or averting those dangers once they are perceived?

III. When a landlord rents a home to a family based upon an oral agreement, is there an implied warranty of habitability that the home is fit for human habitation and has been maintained in a reasonably workmanlike manner?

IV. Where there are defects in a stair system does a material question of fact exist, precluding summary judgment, as to whether appellant's fall was caused by the defects in the stair system?

V. Where the owner of a house orally rents it, knowing or having reason to know of numerous safety violations in the stair system, does a material question of fact exist, precluding summary judgment, as to whether the home is a nuisance?

VI. May a landlord who fails to inspect a rental house be held strictly liable when he rents the house in a defective condition unreasonably dangerous to those who may be expected to use the premises?

Appellee landlord rephrases in this way:

1. Under the facts of this case, did Appellee owe a duty of care to the social guests of his tenants?

2. As a matter of law, have Appellants failed to establish causation?

3. Should the Court reject Appellants' requests to radically alter Wyoming premises liability law by overruling longstanding precedent and by creating new claims for relief?

## FACTS

In 1981, Appellee Guido Flaim (landlord) purchased seven homes, sight unseen, by contract for deed and received the warranty deeds on August 6, 1990. One of those properties, a residential home located at 324 "O" Street in Rock Springs, Wyoming, was orally leased to Dan and Becky Stroud (tenants). The oral lease was a bare bones commitment by the tenants to pay rent of $200.00 per month in return for landlord's surrender of possession. The parties did not discuss or make any agreements regarding repairs, express warranties of habitability, landlord's right to reenter or landlord's retention of any control over the premises. Tenants received exclusive possession and control.

Appellant Jackie Ortega (Ortega) was a social guest of the tenants on the evening of July 17, 1992. Ortega had visited at the house before and knew the house contained an interior stairway descending to the basement. In the early morning hours of July 18, 1992, Ortega told several people she was going to the bathroom and left the kitchen. A few seconds later others heard a crash and found an injured Ortega at the bottom of the staircase. Ortega filed suit against landlord alleging a defective staircase caused her injuries and discovery followed.

Discovery revealed essential material facts of this case were undisputed, although the parties disputed whether the tenants had previously complained to the landlord that the stair system was dangerous because it was too steep, its treads too narrow and it did not have a handrail. Under the law applicable to landlord liability, this factual dispute was relevant only to the issue of whether the defects were patent or latent. Accepting the tenants' contention they had complained only indicated any defects of the staircase were patent.

Following discovery, landlord moved for summary judgment based upon depositions indicating the material facts were undisputed and the question faced was a legal question of whether the law attached liability to a landlord. The district court held the common law rule of landlord nonliability applied and although exceptions to the general rule existed, none applied to these facts. The district court summarily rejected the other liability theories as being without merit. The landlord's motion for summary judgment was granted and this appeal followed.

## STANDARD OF REVIEW

Our often stated standard of review for summary judgment appeals is well known and need not be repeated here.

## DISCUSSION

### Landlord Liability

 In the landlord and tenant relationship, Wyoming follows the common law rules. *Lyden v. Winer*, 878 P.2d 516 (Wyo.1994); *Mostert v. CBL & Assoc.*, 741 P.2d 1090, 1099 (Wyo.1987); *Medlock v. Van Wagner*, 625 P.2d 207, 208 (Wyo.1981); *Matter of Estate of Mora*, 611 P.2d 842, 847 (Wyo.1980). Under those rules, a landlord owes no greater duty to a tenant's guests than the landlord owes to the tenant himself. *Clemmons v. Fidler*, 58 Wash.App. 32, 791 P.2d 257, 260 (1990). Generally, that duty is nonexistent since landlords enjoy immunity from tort liability, being one of the few classes of defendants who can invoke *caveat emptor*.

 The common law rule as applied today actually originated during 16th century feudalism when a tenant leased to acquire land. Buildings were simple and their living conditions of little concern to the tenant. Tenants' rights were best protected by the common law view that a landlord's lease to a tenant was a conveyance of the premises for the term of the lease.[1] From that view, the tenant was the owner and occupier subject to all the responsibilities of one in possession and burdened with maintaining the premises in a reasonably safe condition to protect persons who came upon the land. *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366, 1368–69 (1975). As a general rule, the landlord owed no duty to the tenant or the tenant's guests for dangerous or defective conditions of the premises. *Medlock*, 625 P.2d at 208; *Hefferin v. Scott Realty Co.*, 71 Wyo. 114, 254 P.2d 194, 197 (1953); and *see* RESTATEMENT (SECOND) OF TORTS §§ 335, 356 (1965).

Over time, the courts created exceptions to the rule of landlord nonliability, some of which have been recognized in Wyoming:

1. Undisclosed conditions known to lessor and unknown to the lessee which were hidden or latently dangerous and caused an injury. *Medlock*, 625 P.2d at 208.

2. The premises were leased for public use and a member of the public was injured.

3. Part of the premises was retained under the lessor's control, but was open to the use of the lessee. *Lyden*, 878 P.2d at 518.

4. Lessor had contracted to repair the premises. *Hefferin*, 254 P.2d at 197.

5. Negligence by lessor in making repairs. *Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows*, 526 P.2d 52 (Wyo. 1974).

and *see* RESTATEMENT (SECOND) OF TORTS §§ 356–362 (1965).

In order for social guest Ortega to succeed in imposing landlord liability in this case, Wyoming's adherence to the common law rule must be abandoned. She points to *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528 (1973), in which the court did abandon the common law rule and impose a duty of reasonable care on landlords. Similar to this case, *Sargent* involved a fall down the stairs, but the fall was caused by the landlord's negligent construction of the stairs. The resulting defective stairs caused a child to fall to her death. The tenants in *Sargent* had no authority to alter or remedy the defective stairs and the court considered that the steepness of the stairway could be considered a hidden defect or secret danger in the case of a child since the danger and risk may have been obvious to an adult but may have been imperceptible to a child. *Sargent*, 308 A.2d at 531–32. Despite the possibility that this hidden defect exception applied, the court chose to abandon the general rule of landlord nonliability and apply ordinary negligence principles.

*Sargent*'s conclusion that the nonliability rule must be abandoned followed the court's examination of the reasons for the landlord nonliability rule. Determining those reasons should be reevaluated in light of current needs and principles of law from related areas, the court found that stare decisis must yield to the need for responsible growth and change in rules that have failed to keep pace

---

1. Jean C. Love, *Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Lia-*bility?, 1975 Wɪs.L.Rᴇᴠ. 19, 26 (1975).

with modern developments. *Sargent,* 308 A.2d at 530, 534.

Other states, either judicially or through legislation, have accepted the contention that tenants in today's modern society are primarily concerned with acquiring a place to live rather than acquiring land to farm and have abrogated the common law rule. New Hampshire's lead in the adoption of an independent negligence doctrine for landlords has been followed by several other states. *Pagelsdorf v. Safeco Ins. Co. of Am.,* 91 Wis.2d 734, 284 N.W.2d 55 (1979); *Young v. Garwacki,* 380 Mass. 162, 402 N.E.2d 1045 (1980); *Mansur v. Eubanks,* 401 So.2d 1328 (Fla.1981); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Turpel v. Sayles,* 101 Nev. 35, 692 P.2d 1290 (1985); *Favreau v. Miller,* 156 Vt. 222, 591 A.2d 68 (1991); *Newton v. Magill,* 872 P.2d 1213 (Alaska 1994). Other states have construed statutes, contracts, or an implied warranty of habitability as imposing tort liability upon landlords. Since the 1970s, this legal trend has resulted in the majority of states abrogating the common law rule of landlord nonliability under various legal theories. *See* Olin L. Browder, *The Taming of a Duty—The Tort Liability of Landlords,* 81 MICH.L.REV. 99, 112–13 (Nov. 1982); and *see Williams v. Melby,* 699 P.2d 723, 726 (Utah 1985).

Presently, Wyoming has no legal basis for landlord tort liability as it has not enacted legislation on this issue, has not judicially recognized an implied warranty of habitability for rental premises and has not judicially altered the common law rule. Social guest Ortega asserts Wyoming should abandon the common law rule and adopt landlord liability under both an independent negligence doctrine and an implied warranty of habitability. Landlord argues that when the tenant knows of dangerous conditions and is in control of the premises, the tenant is in the best position to at least warn social guests of the danger.

The common law "is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes." *Newton,* 872 P.2d at 1217–18. By this definition, the common law is dynamic and a court can modify it to meet changing conditions. *Nulle v. Gillette–Campbell Fire Bd.,* 797 P.2d 1171, 1173 (Wyo.1990); *Newton,* 872 P.2d at 1218. This court has modified or abandoned the common law on the issues of interspousal tort immunity, parental tort immunity, recovery for loss of spousal and parental consortium, negligent infliction of emotional distress, off-premises liability of a lessee, and classifications of tort plaintiffs in landowner liability cases.[2]

Where this court has considered whether a duty should be imposed based on a particular relationship, numerous factors have been balanced to aid in determining whether a duty should be imposed.[3] Social guest Ortega

---

2. *Tader v. Tader,* 737 P.2d 1065 (Wyo.1987) (abrogating common law rule of interspousal tort immunity); *Dellapenta v. Dellapenta,* 838 P.2d 1153 (Wyo.1992) (abrogating common law rule of parental tort immunity); *Weaver v. Mitchell,* 715 P.2d 1361 (Wyo.1986) (rejecting common law rule denying recovery for loss of spousal consortium); *Nulle v. Gillette–Campbell Fire Bd.,* 797 P.2d 1171 (Wyo.1990) (rejecting common law rule denying recovery for claim for loss of parental consortium); *Gates v. Richardson,* 719 P.2d 193 (Wyo.1986) (rejecting common law rule denying a family member recovery of damages for the negligent infliction of emotional distress); *Mostert v. CBL & Assoc.,* 741 P.2d 1090 (Wyo. 1987) (rejecting common law rule that a landowner has no duty to warn an invitee of risks off the landowner's premises); and *Clarke v. Beckwith,* 858 P.2d 293 (Wyo.1993) (rejecting common law classifications of invitee and licensee and ruling that landowners owed a duty of reasonable care).

3. In *Mostert,* the court analyzed the factors below in concluding movie theater lessees owed an affirmative duty to business invitees to warn of off-premises danger:

 (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

 *Mostert,* 741 P.2d at 1094, citing to *Gates v. Richardson,* 719 P.2d at 196, quoting *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342, 83 A.L.R.3d 1166 (1976). The factors have been succinctly summarized in a landlord liability case as:

does not analyze these factors or provide a record for our analysis, but offers only the decision of *Sargent* as argument that modern trends demand abrogation of the common law in this instance. We believe such a change cannot be based solely upon a trend, but rather must be based upon relevant data and analysis which supports the legal, social and/or economic theories behind abrogating the common law.

Although most states have judicially recognized some type of landlord liability without relevant data, this recognition appears to have been driven by a desire to further the social policy of improving living conditions. *See* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT, § 17.6 (1977). In our opinion this is a matter for the legislature, and we decline to abrogate the common law in this instance without a proper record and insightful analysis of whether conditions in Wyoming warrant a change regarding residential leases.

▮▮▮ Having held the common law will not be abrogated in this case, we apply it to the facts. Generally, when real property is leased to a tenant, the landlord's duty as a landowner shifts to the tenant as soon as the landlord surrenders possession and *control of* the premises to the tenant. *Mostert*, 741 P.2d at 1090. Although the tenants had complained to the landlord the staircase was dangerous because it was too steep, the treads too narrow and it did not have a handrail, this evidence only indicates the defects were patent rather than latent. Absent a contractual provision to repair, a landlord has no duty to repair patent defects. The landlord owed no duty to social guest Ortega and summary judgment was properly granted.

### Implied Warranty of Habitability

▮▮▮ In Wyoming, an implied warranty of habitability attaches only to a sale of improved property by the builder. *Barlage v. Key Bank of Wyoming*, 892 P.2d 124, 126

(Wyo.1995). The warranty is to be honored by the builder even as to remote purchasers, but is not applicable in sales between a non-builder vendor and a vendee. *Barlage*, 892 P.2d at 126.

Social guest Ortega contends Wyoming should join the majority of states in adopting the implied warranty of habitability for rental premises and then impose a tort duty upon landlords. *See* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT § 17.6 (1977). For the same reasons discussed above, the rule of an implied warranty of habitability will not be extended to rental premises under these facts. *Barlage*, 892 P.2d at 126.

### Nuisance

Social guest Ortega contends the stairs posed a private nuisance as defined in RESTATEMENT (SECOND) OF TORTS § 821 (1965). Landlord contends application of this rule of nuisance requires that social guest Ortega have standing to assert this claim. Citing to RESTATEMENT (SECOND) OF TORTS § 821E, he claims recovery at law for damages or in equity for injunctive relief is limited to those who have property rights and privileges with respect to the use and enjoyment of the land affected. Landlord identifies those persons as including possessors, owners of easements and profits and owners of nonpossessory estates in the land who are detrimentally affected by interferences with its use and enjoyment.

Relying on this authority, landlord contends a social guest is a licensee with no property interest in the land and cannot maintain an action for private nuisance; social guest Ortega does not address the issue of standing. Although this particular section of the Restatement has not been adopted by this court, she does not provide argument or authority for its application. This court has generally limited nuisance actions to those situations described in RESTATEMENT (SECOND) OF TORTS § 371 (1965):

Factors to consider in imposing a duty on a landlord include weighing the relationship of the parties against the nature of the risk and the public interest in the proposed solution, as well as the likelihood of injury, the magnitude

of the burden of guarding against it, and the consequences of placing that burden on a defendant.

*C.S. v. Sophir*, 220 Neb. 51, 368 N.W.2d 444, 446 (1985) (citations omitted).

A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.

*Timmons v. Reed,* 569 P.2d 112, 124 (Wyo. 1977). Without argument or analysis to support a nuisance action on these facts, social guest Ortega's claim for nuisance must be rejected as a matter of law. Summary judgment is affirmed on this issue.

### Strict Liability

■ Social guest Ortega contends landlord is strictly liable to her under the rule of RESTATEMENT (SECOND) OF TORTS § 402A (1965), adopted by this court in *Ogle v. Caterpillar Tractor Co.,* 716 P.2d 334 (Wyo.1986). Section 402A applies strict liability in product liability actions. She asserts the California decision of *Becker v. IRM Corp.,* 38 Cal.3d 454, 213 Cal.Rptr. 213, 698 P.2d 116 (1985), extending strict liability to landlords should be applied in Wyoming because there is no significant difference between current Wyoming law and the rule in *Becker.* In *Becker,* a tenant injured by broken, untempered glass from his shower door recovered from the landlord under § 402A's strict liability rule. The *Becker* court determined the untempered shower door glass was a latently defective product since one viewing the glass could not distinguish it from tempered glass. The court considered shower door glass a product which the landlord had placed in the stream of commerce and, for policy reasons, the court extended strict liability to the landlord.

In adopting a strict liability cause of action for injuries caused by defective products, this court adopted the RESTATEMENT (SECOND) OF TORTS § 402A (1965) definition of product liability. *Ogle,* 716 P.2d at 341–42.

> *Special Liability of Seller of Product for Physical Harm to User or Consumer*
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm there-by caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Ogle,* 716 P.2d at 341–42.

The court's expressed policy reason for adopting product liability was to permit recovery by plaintiffs who would not recover under a negligence theory and distribute the damages among those most able to prevent future occurrences or who would pass on the loss to all customers. *Ogle,* 716 P.2d at 342. This policy is effectuated by strict liability's focus on the product itself, and, in the absence of fault, holding a seller or distributor liable for injury or loss resulting from a defective product that entered the stream of commerce. *McLaughlin v. Michelin Tire Corp.,* 778 P.2d 59, 64 (Wyo.1989).

Wyoming adopted product liability to afford a cause of action against manufacturers or suppliers of defective mass-produced products. To extend product liability to a landlord for a leased residential dwelling, or to an integral component of that dwelling, does not serve those policy reasons. *See generally* AMERICAN LAW OF PRODUCTS LIABILITY, Part 11, § 38:15, p. 31, § 38:16, pp. 33–34 (Supp.1995) (collecting cases holding buildings are not products and holding strict liability against landlords does not serve policy of § 402A); and *see generally Boddie v. Litton Unit Handling Systems,* 118 Ill.App.3d 520, 74 Ill.Dec. 112, 117–19, 455 N.E.2d 142, 147–49 (1983) (considering when components parts of buildings are products within the definition of § 402A). Summary judgment is affirmed on this issue.

## CONCLUSION

The common law rule that a landlord owes no duty to the social guest of a tenant unless the injury was caused by a latent defect or the landlord has retained control applies in this case and no duty was owed to social guest Ortega. A duty was not created by virtue of any contractual relationship. Without duty, summary judgment was properly granted to landlord in social guest Ortega's action for negligence. No other legal basis for recovery for her personal injuries exists in Wyoming. The grant of summary judgment is affirmed.