2001 WY 6

Barbara RAWLINSON, Aaron Rawlinson, and Adrienne Rawlinson and Kristen Rawlinson, minors, by and through their next best friend and mother, Barbara Rawlinson, Appellants, (Plaintiffs),

v.

CHEYENNE BOARD OF PUBLIC UTILITIES, Appellee (Defendant).

No. 00–36.

Supreme Court of Wyoming.

Jan. 23, 2001.

Representing Appellants: Carol K. Watson and Bernard Q. Phelan of Phelan Watson Law Office, Cheyenne, WY.

Representing Appellee: Deborah Ford Mincer of Murane & Bostwick, LLC, Cheyenne, WY.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL and KITE, JJ.

KITE, Justice.

[¶ 1] The sole issue before this Court is whether the district court properly granted summary judgment in favor of the Cheyenne Board of Public Utilities (the BOPU) concluding that the appellants' claim was time barred under the Wyoming Governmental Claims Act statute of limitations. The order granting the BOPU's motion for summary judgment is affirmed.

## ISSUES

[¶ 2] The appellants present the following issue for our review:

Whether the district court abused its discretion in finding that the appellants' cause of action accrued no later than June 23, 1995, rather than July 22, 1998, for purposes of applying the two-year statute of limitation, Wyo.Stat. § 1–39–113, against the Board of Public Utilities.

The BOPU lists the issues as follows:

1. Whether the District Court properly granted summary judgment in favor of the Board of Public Utilities based on the Governmental Claims Act statute of limitations?

2. In the alternative, whether the record establishes that summary judgment should be affirmed because the Plaintiffs produced no admissible evidence of negligence by the Board of Public Utilities?

3. Whether sanctions should be ordered in light of the Appellants' failure to designate a record and the pursuit of this frivolous appeal?

## FACTS

[¶ 3] Before Barbara Rawlinson purchased a home in Cheyenne, a home inspector issued a written report dated December 16, 1994, regarding a structural evaluation of the home. The report specified in pertinent part: "*soil in the crawl space area was wet. A positive, 'no-leak' condition cannot be established because of the wet area.*" Following the purchase of the home, Ms. Rawlinson testified that she was aware of water damage as early as June 1995 and continued to investigate the water in the crawl space. She engaged two engineers to inspect the property, and each engineer issued a report. The first report was issued on June 23, 1995, and the second report was issued on July 9, 1997. The engineers reported that the home had property damage due to water seepage. In addition, an employee with the BOPU visited Ms. Rawlinson's home in 1997 and noted wet dirt in the crawl space. The BOPU received a report that the home had water seepage problems on and off for at least two years, and, as a result, the BOPU performed tests to check for leaks.

[¶ 4] Three and a half years later, Ms. Rawlinson presented an itemized statement

to the BOPU for its negligence in failing to properly maintain a fire hydrant and the resulting damage to her home. The following day, December 11, 1998, she filed a complaint against the BOPU and several other defendants, alleging various causes of action. The BOPU filed a motion for summary judgment claiming the two-year limitation under the Wyoming Governmental Claims Act had expired and it had not committed an act of negligence. The district court granted the BOPU'S motion for summary judgment on the basis of the statute of limitations. It determined that Ms. Rawlinson discovered her cause of action on June 23, 1995, the date she became aware of property damage. The district court concluded that Ms. Rawlinson's claim exceeded the two-year limitation and the BOPU was entitled to a judgment as a matter of law. It declined to rule on the merits of the underlying negligence claim. Ms. Rawlinson appeals to this Court.

### STANDARD OF REVIEW

[¶ 5] We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Lieberman v. Wyoming.com LLC*, 11 P.3d 353, 356 (Wyo.2000). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* The review of a grant of summary judgment involving a question of law is *de novo*. *Id.*

### DISCUSSION

[¶ 6] The determinative issue in this case is whether discovery of the claim occurred when the damage was discovered or when a particular alleged tortfeasor was discovered. Ms. Rawlinson argues that the date of discovery was the date she realized the water could be coming into her basement from the BOPU city water supply. According to Ms. Rawlinson, the summer of 1998 had been unusually dry, and she had ceased to water her lawn in an effort to determine the cause of her flooding problems. On July 22, 1998, the sump pump, which Ms. Rawlinson had installed to remove water from the basement,

suddenly quit working. The structural engineer stated that it was unusual for a sump pump to abruptly stop pumping unless a constant source of water flooding the basement had simply dried up, such as a leak in the city water system. Ms. Rawlinson contends that July 22, 1998, is the date of discovery as this was the date she first suspected the BOPU was responsible for her standing water problem. As a result, she insists that she complied with the applicable statute of limitations.

[¶ 7] The BOPU argues that the date of discovery was June 1995 and Ms. Rawlinson's admission that she was aware of property damage in June 1995 should result in a bar to her claim under the statute of limitations. We agree.

[¶ 8] It is undisputed that the Wyoming Governmental Claims Act applies in this case. The statutory claims procedure under the Wyoming Governmental Claims Act provides as follows:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyo.Stat.Ann. § 1–39–113(a) (LEXIS 1999). Wyoming precedent is unequivocal in holding that failure to file a claim with the governmental entity within the two-year period provided in § 1–39–113(a) is an absolute bar to suit. *Davis v. City of Casper*, 710 P.2d 827, 829 (Wyo.1985).

[¶ 9] Statutes of limitations are pragmatic devices to save courts from stale

claim litigation. *Duke v. Housen*, 589 P.2d 334, 340 (Wyo.), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). Such statutes represent legislative and public policy controlling the right to litigate. *Id.* They are arbitrary by their very nature, and we must give full force to the applicable statutes without regard to the merits of the particular claim. *Id.* When a statute of limitations is being considered, the nature and extent of the injury and the amount of money damages involved are only significant in the effect they may have on when the cause of action arose and when the time expired for pursuing the applicable judicial remedy. 589 P.2d at 340.

[¶ 10] Settled Wyoming precedent confirms that Wyoming is a discovery state. *Amoco Production Company v. EM Nominee Partnership Company*, 2 P.3d 534, 542 (Wyo.2000). The discovery rule delays the accrual of the cause of action in cases in which the injury or damage is not immediately apparent. *Nowotny v. L & B Contract Industries, Inc.*, 933 P.2d 452, 456 (Wyo. 1997). This rule protects an injured person who would otherwise be barred from bringing an action simply because he is unaware of an injury. 933 P.2d at 457.

[¶ 11] In *Waid v. State by and through Department of Transportation*, 996 P.2d 18 (Wyo.2000), this Court addressed the plain meaning of the Wyoming Governmental Claims Act. We said the plain language of the statute measures the time for filing a claim not from the date damage occurs but from the date on which the "act, error or omission" occurs or when a claimant discovers it. 996 P.2d at 25. The facts in *Waid* involved two separate incidences of flooding, which caused damage to the claimants' property. *Id.* The claimants were clearly on notice that an "act, error or omission" occurred on the date of the first flood; however, they failed to make a claim at that time. The claimants argued that, although the damage arising out of the initial flood was time barred, the recurrence of the second flood started the statutory period to begin again. *Id.* We held the statute of limitations began to run when the claimant discovered the initial flood and said: "The situation had not changed by 1993, and although that flood caused additional damage, there was no new 'act, error or omission,' or a fresh discovery of such that would cause the statutory time period to start anew." *Id.*

[¶ 12] The statute begins to run from the first time claimants are chargeable with information which should lead them to believe they have a claim. The occurrence of a subsequent incident does not extend the statutory period. Absent such a conclusion, in cases where there is an ongoing condition, such as water seepage, there would be no means to determine when the statute of limitations should commence. When *Waid* is applied to the facts in this case, Ms. Rawlinson was chargeable with knowledge of an "act, error or omission" when she discovered property damage. Her claimed discovery in 1998 that the BOPU might be legally responsible is not a new "act, error or omission" that would cause the statutory time period to begin anew.

[¶ 13] In *Anderson v. Bauer*, 681 P.2d 1316 (Wyo.1984), this Court addressed a similar claim in which several homeowners sought to recover for property damage which occurred as a result of water seepage. In that case, we explained that the statute of limitations begins to run when the injured party knows or reasonably ought to know that some damage has resulted from the wrongful act even though the damage is slight, it continues to occur, or additional damage caused by the same wrongful act may result in the future. 681 P.2d at 1321. Although based upon a different statute of limitations, this Court held in part: "Each homeowner's cause of action accrued on or about the date water seepage was first noticed and damage occurred." *Id.* The language of the Wyoming Governmental Claims Act does not direct the application of a different rule when the government is a possible tortfeasor.

[¶ 14] Furthermore, in *Barlage v. Key Bank of Wyoming*, 892 P.2d 124 (Wyo.1995), a case with very similar facts, this Court determined discovery of water seepage, not discovery of the cause of the seepage, triggered the applicable statute of limitations. The Court explained its decision:

It is clear Barlage was first aware of water seepage into the crawl space in 1986. In endeavoring to avoid the statute of limitations, Barlage argues he was not aware he had a claim against Key Bank although he was aware of the invasion of the water. This contention is not consistent with Wyoming law which, in the area of tort injuries, can perhaps be summarized by the proposition that the occurrence of damage satisfies the requirement that the injured party knew or *reasonably should have known* of the potential of a wrongful act being the cause.

892 P.2d at 126–27 (emphasis added).

[¶ 15] Finally, this Court stated in *Nowotny*, 933 P.2d at 458: "We do not choose to expand the discovery rule to encompass a requirement that the identity of the tort[ ]feasor must be known." *Nowotny* cites to *Staiano v. Johns Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681 (1982), as articulating the proper rule on whether the discovery rule should be expanded to include the identity of the tortfeasor. 933 P.2d at 457. The court in *Staiano* stated:

> "[O]nce [a plaintiff] possesses the salient facts concerning the occurrence of his injury and *who or what* caused it, he has the ability to investigate and pursue his claim." Here, it is enough that appellant-husband knew that his asbestosis was caused by the inhalation of asbestos dust emanating from asbestos products on the work site. We find no reason to postpone the commencement of the statute until a plaintiff has in addition discovered who manufactured the products that he knows have injured him. Indeed, to do so would "nullify the justifiable rationale of the statute of limitations and permit the prosecution of stale claims."

450 A.2d at 685 (citation omitted). The same Pennsylvania court further refined this rule: "It does not matter whether a plaintiff is aware that someone may be legally responsible for his injury. Once he knows or *should know* the cause of that injury, he must investigate the situation and ascertain who might be legally culpable." *Redenz by Redenz v. Rosenberg*, 360 Pa.Super. 430, 520 A.2d 883,

886, *appeal denied*, 516 Pa. 635, 533 A.2d 93 (1987) (emphasis added).

[¶ 16] The precedent set forth in *Waid, Anderson, Barlage, and Nowotny* establishes the standard for claims of this nature. A cause of action accrues when a claimant is chargeable with knowledge of an "act, error or omission." The occurrence of damage satisfies the requirement that an injured party knew or reasonably should have known of the potential of a wrongful act being the cause; however, it is not necessary for a claimant to know that someone may be legally responsible for his injury. The statute of limitations in this case began to run when, by her own admission, Ms. Rawlinson discovered property damage in June of 1995. We conclude that, with notice of the water seepage and its subsequent damage, Ms. Rawlinson reasonably should have known of a potential wrongful act being the cause. She then had to ascertain whether anyone was legally culpable. The undisputed facts demonstrate that Ms. Rawlinson had some reason to complain to the BOPU with regard to the seepage. In 1997, the BOPU received a report, presumably from Ms. Rawlinson, that her home had water seepage problems on and off for at least two years. As a result, the BOPU performed tests to check for leaks. Ms. Rawlinson's contention that July 22, 1998, was when she first suspected the BOPU was the source of the incoming water is contrary to the evidence presented in the record. Despite the fact that Ms. Rawlinson's experts later developed a new theory of causation, the statute of limitations still applies. We conclude that Ms. Rawlinson discovered an "act, error or omission," which provided the basis of the claim against the BOPU, when she discovered the property damage caused by the water seepage in June of 1995.

[¶ 17] Ms. Rawlinson mistakenly relies on *Metzger v. Kalke*, 709 P.2d 414 (Wyo.1985), a medical malpractice case, as the principal authority for her argument. We recognize that, under Wyo.Stat.Ann. § 1–3–107 (LEXIS 1999), the medical malpractice statute of limitations, a plaintiff discovers an "act, error or omission" when he learns that his harm resulted from the wrongful conduct of the

defendant. 709 P.2d at 419. However, in *Metzger* we emphasized unique policy reasons underlying medical malpractice cases which are inapplicable here, and this Court declines to extend the same standard to all claims of damage.

[¶ 18] As it is applied in Wyoming, the discovery rule provides two years from the time an alleged "act, error or omission" is discovered until a cause of action must be instituted. This is a reasonable period of time for an injured party to discover both a claim and a potential tortfeasor. After careful review of the record, we conclude the statute of limitations began to run when Ms. Rawlinson discovered property damage in June 1995. Her failure to timely file results in an absolute bar to suit. We further conclude that this is not one of those rare circumstances where sanctions under W.R.A.P. 10.05 are appropriate.

[¶ 19] Affirmed.

LEHMAN, Chief Justice, dissenting.

[¶ 20] I must respectfully dissent from the majority's decision that Wyo.Stat.Ann. § 1–39–113 of the Wyoming Governmental Claims Act bars Mrs. Rawlinson's claim against the Board of Public Utilities (BOPU). I believe the majority errs when it fails to apply the plain language of the governing statute; mistakenly equates the discovery of damage with the discovery of the act, error or omission which caused that damage; and ultimately concludes that summary judgment was appropriate.

[¶ 21] Wyo.Stat.Ann. § 1–39–113 (LEXIS 1999) provides that:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after *discovery of the alleged act, error or omission,* if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; *or*

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

[¶ 22] The majority cites to our recent discussion in *Waid v. State ex rel. Dep't of Transp.,* 996 P.2d 18, 25 (Wyo.2000), where we explained that "the time for filing a claim [under Wyo.Stat. § 1–39–113] is measured not from the date damage occurs, but from the date on which the 'act, error or omission' occurs, or when it is discovered by a claimant." In *Waid,* we held that the plaintiffs' claim was barred stating, "there was no new 'act, error or omission,' or *a fresh discovery of such that would cause the statutory time period to start anew."* *Id.* (emphasis added).

[¶ 23] I think the plaintiff correctly relies on *Metzger v. Kalke,* 709 P.2d 414 (Wyo. 1985), for the proposition that discovery of the act, error or omission as contemplated by the statute means *actual* discovery. Wyo. Stat.Ann. § 1–3–107(a) (LEXIS 1999), the statute of limitations for medical malpractice actions, contains identical language to the relevant portion of Wyo.Stat.Ann. § 1–39–113 later adopted by the legislature.[1] In *Metzger* we interpreted the statute's plain language and, after an extended, thoughtful discussion of the issue, determined that "[i]n view of the specific language of [the statute] and the rationale behind the discovery rule generally, . . . a plaintiff discovers an 'alleged act, error or omission' within the meaning of [the statute] when he learns that his harm resulted from the wrongful conduct of the defendants." *Id.* 709 P.2d at 419. This court in *Metzger* pointed out that the applicable statute extends the limitation period based on the plaintiff's *actual* discovery of the alleged conduct. *Id.* at 420. The court went on to say: "We are not concerned with what appellants in this case may have suspected or what they should have known in December, 1981. The affidavits submitted on behalf of appellants establish that they learned of appellees' alleged wrongdoing on July 15, 1982." *Id.*

---

1.  Compare 1976 Wyo.Sess.Laws ch.18, § 1 to 1979 Wyo.Sess.Laws ch. 157, § 1.

[¶ 24]   According to the plain language of the statute, Mrs. Rawlinson can properly rely on the discovery provision of § 1–39–113(a) if she establishes that she failed to discover BOPU's alleged negligence within two years of the act, error or omission if either (i) it was not reasonably discoverable within that period, *or* (ii) she did not discover it during that period despite her exercise of due diligence.  The majority, however, applies neither the discovery provision nor the due diligence section of the statute.

[¶ 25]   The record shows that Mrs. Rawlinson had a pre-purchase inspection of her home done in December of 1994, which disclosed the soil in the crawl space of her home was wet.  After an incident in June of 1995 when water flooded the basement, Mrs. Rawlinson hired the first of two structural engineers to determine the cause of the water seepage.  The first engineer issued a report on June 23, 1995, in which he determined that some of the water damage was caused by a downspout draining toward the house.  He also reported that "ponding adds to the ground water next to the foundation and migrates into the residence."  The report, read as a whole, indicates that the first structural engineer believed that improper downspouts as well as water shedding off the residence ponding with ground water was the *source* of the water seepage.  Mrs. Rawlinson testified in deposition that the summers of 1995, 1996, and 1997 were unusually wet, and she believed rain and/or groundwater was the source of the seepage in her home that led to standing water in her basement.  Mrs. Rawlinson began repairs to her home to solve the water seepage problems that took place during the summer months.  In July of 1997, a second structural engineer hired by Mrs. Rawlinson issued a report in which he indicates that rain and/or groundwater draining into the home is probably the source of the water seepage.  In June of 1997, BOPU visited Mrs. Rawlinson's home for the first time purportedly to test new equipment.  After being informed that the homeowner had been experiencing water problems for two years, BOPU conducted further tests on or near the residence twice more in July of

1997.  On her part, Mrs. Rawlinson continued to make the recommended repairs to her home which would eliminate the water seepage in her basement.

[¶ 26]   According to metereological data, the summer of 1998 was unusually dry, and Mrs. Rawlinson had ceased to water her lawn in an attempt to discover the source of her home's water seepage.  While the structural engineer was in her basement, he remarked that the sump pump seemed to be working abnormally, cycling gallons of water every 60 seconds even after extensive repairs to the foundation had been made.  When the sump pump abruptly stopped, he remarked that was unusual and would appear as if it had been fed from a constant source of water that had simply dried up, like a leak in the city's water system.  Mrs. Rawlinson later on that same day learned that the city had changed a hydrant near her home at approximately the same time.  Thus, Mrs. Rawlinson's *actual discovery* of the alleged act, error or omission took place at the earliest, on that date: July 22, 1998.  On July 29, 1998, she had both water and soil samples tested in an attempt to determine whether fluoride and chloride in the water could indicate its source as city water.  She filed her written claim against BOPU on December 10, 1998.  Based on the facts before me, I cannot determine as a matter of law that Mrs. Rawlinson did not exercise due diligence in an attempt to uncover the cause of her injury.  Further, I do not believe that under the circumstances Mrs. Rawlinson was unreasonable in initially believing that the source of the water seepage in her basement was rainwater or groundwater.

[¶ 27]   I believe the majority's reasoning is erroneous because it mistakenly equates discovery of damage with discovery of the cause of damage.  It is undisputed that Mrs. Rawlinson knew she had water seepage in her basement on June 23, 1995; however, that does not mean that she simultaneously *discovered the act, error or omission* which gives rise to her cause of action (BOPU's alleged failure to maintain its hydrant).[2]

2.   The statute is difficult to apply under the circumstances of this case because, while both the

majority and I address the date of *discovery* of the act, error, or omission in question, the actual

The majority errs by improperly applying non-analogous cases to the facts before us. It is one thing for this court to hold, as we have, that discovery of water seepage in the basement is sufficient to concurrently alert a plaintiff to the fact that they have a potential cause of action against their builder, their seller, the city inspector, or the county planner;[3] it is quite another to determine that, as a matter of law, discovery of water seepage in the basement is sufficient to concurrently alert a plaintiff to the fact that they have a potential cause of action against BOPU for failure to maintain its hydrant.

[¶ 28] Moreover, the majority opinion flouts the standard for reviewing this issue. This court has held that only if uncontroverted facts exist which specify when a reasonable person should have been placed on inquiry notice can we resolve the question as a matter of law. *Hiltz v. Robert W. Horn, P.C.* 910 P.2d 566, 569 (Wyo.1996); *Bredthauer v. Christian, Spring, Seilbach and Associates,* 824 P.2d 560, 562 (Wyo.1992); *Mills v. Garlow,* 768 P.2d 554, 556 (Wyo. 1989). Otherwise, "[o]rdinarily, entering a summary judgment on the issue of when a statute of limitations commences to run would be inappropriate." *Hiltz,* 910 P.2d at 569 (citing *Palmer v. Borg–Warner Corp.,* 818 P.2d 632, 634 (Alaska 1990)).

[¶ 29] In addition, although not a suit brought under the Wyoming Governmental Claims Act, the majority's reasoning also departs from the rule we announced in *Nowotny v. L. & B. Contract Industries, Inc.,* "once [a plaintiff] possesses the salient facts concerning the occurrence of his injury and *who or what* caused it, he has the ability to investigate and pursue his claim." 933 P.2d 452, 457 (Wyo.1997) (quoting *Staiano v. Johns Manville Corp.,* 304 Pa.Super. 280, 450 A.2d 681, 685 (1982) (emphasis in original)). In *Nowotny,* the appellant was injured when the allegedly defective restaurant bench seat he was sitting on collapsed. This court appropriately determined that the appellant

knew of both his injury *and its cause* on that date and his failure to determine the identity of manufacturer of the bench seat within the four-year statute of limitations barred his claim. Mrs. Rawlinson's case could properly be analogized to that of the plaintiff in *Nowotny* if she had known the water seepage in her basement was caused by a negligently maintained fire hydrant yet failed to determine the identity of the party who exercised dominion over the hydrant until after the claims period had expired. However, when the majority in its opinion improperly labels Mrs. Rawlinson's lack of knowledge on June 23, 1995, as merely that of the *identity* of her potential tortfeasor rather than what it truly was—a lack of knowledge of the *cause of her injury*—it misconstrues our holding in *Nowotny* and works a serious injustice on both precedent and the claimant in this case contrary to the stated purpose of the Wyoming Governmental Claims Act: "to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming."[4] Thus, therein I cannot concur.

---

date of the act, error or omission has not been established. It appears indisputable that, *if* BOPU were negligent, its negligence must have occurred prior to the flooding of Mrs. Rawlinson's basement in June of 1995.

3. *See Anderson v. Bauer,* 681 P.2d 1316 (Wyo. 1984); *Barlage v. Key Bank,* 892 P.2d 124 (Wyo. 1995); *Davis v. City of Casper,* 710 P.2d 827 (Wyo.1985).

4. Wyo.Stat.Ann. § 1–39–102(a)(LEXIS 1999).